to begin in Horn v. New Haven. I understand we'll be first hearing from from Mr. Finuccia. Finuccan, yes, I'm here, Your Honor. Yes, we're ready to begin. Thank you, Your Honor. Good morning and may it please the Court. Stephen Finuccan, Assistant Attorney General for the State of Connecticut for Defendant James Stevenson, and respectfully requesting that your District Court that denied Mr. Stevenson his qualified immunity and prosecutorial immunities from suit. If I may jump right into substance on the qualified immunity issues, the right at issue is properly defined as this, the right of an independent freestanding Brady disclosure requirement extending past prosecutors and past police officers that attaches to a forensic witness or a scientist, and nothing in this circuit has ever even addressed this, let alone establish or decided it before the District Court's decision in this case. I mean there's no dispute about that. There's no dispute that any there's no case that's been discovered or cited that analyzes and addresses this specific issue. So instead, the most we have is this court's decision in Walker v. City, New York, which has been heavily briefed and was relied upon the District Court. The court erred because the most Walker does is possibly suggest that when this court came to address this issue, that it may decide it in a way that extends this right past police officers. But the Supreme Court has been very clear, and this court has followed suit, that suggesting that the law at the time suggesting the right may eventually develop in that way is insufficient. The law at the time has to be clear and beyond debate, and here we don't even have a decision that addresses it at all. Another important aspect of this is the case law from this circuit in the Supreme Court is crystal clear that Mr. Stevenson and someone in his shoes, which is how we must do the analysis, someone in his role, is not a legal scholar, is not a judge or a law professor or a lawyer, and he's not required to parse holding and dicta and determine exactly where the trends of the law are going and accurately predict them. And that's what the District Court required him to do. That's the level of knowledge and sophistication that the District Court and the plaintiffs are imputing on to Mr. Stevenson. The Walker decision addresses prosecutors and extends the prosecutor's duty in a limited way to police officers. That's what it says. That's what the District Court in this case held that it says, and the District Court held it applied to police officers generally. But then there's little to no analysis of how that clearly extends past police officers. Let me just ask, I think we're at the three-minute mark. Isn't the primary function of the Connecticut State Police Lab to examine physical evidence to see if a crime has been committed to connect that crime to a particular individual on behalf of the police? Primarily, yes. However, the distinction, I'm sorry, Your Honor, I didn't mean to cut you off. No, go ahead. So the distinction, while that's its role, the officers there do have different roles and different duties. So unlike a prosecutor who can charge and prosecute and convict a criminal defendant and police officers who can arrest them, and those those officials obviously have a clearly established Brady obligation, the do not have that authority. They're merely providing assistance to the true law enforcement officers and branches. Here, just because he was an employee of a state agency does not render him a police officer. There's no dispute in the stage in the case that he was not a police officer at the time in question. So because he worked for an agency that had the word police in the title does not render him a police officer and does not render him to follow. I'm sorry, go ahead. I don't know if you're about to ask your question. This is Judge Walker. Would the same be true if he were working for the New Haven Police Department and they had their own prime lab and did this and then and somebody was working in that lab? Would the same results pertain to the one that you're arguing? Yes, Your Honor, with a caveat. So yes, if the New Haven Police Department is set up in a way that the state is, where if you are a forensic examiner, that's your only role. If there's overlap and you're also a police officer, that would perhaps be different. But as the state is set up, assuming New Haven would be set up the same way, that if you're a forensic examiner, that's your only role and not a sworn police officer, then yes, Your Honor. Isn't the test, what would a reason have been known to this individual in his position in terms of any Brady obligation? And why would, where exactly was it that Judge Meyer erred in making a determination about that? Why isn't this lab, in that it isn't this lab integral to the to the operation of the of the police department? And therefore, people in it would be reasonably held accountable as they would if they were regular sworn police officers. Yes, Your Honor. So yes, the standard, the test is what would a reasonable official in Mr. Stevenson's have known or not known, or perhaps better stated, been certain of, is really this, what would Mr. Stevenson or someone in his shoes know beyond debate? And here, because it's a constitutional right, it's not some statutory right where there's the text that makes it clear, because it's a newly recognized constitutional right, there has to be some authority, some judicial authority, that makes it Now, we don't have that. And Judge Meyer held that, you know, Walker doesn't actually involve someone in his shoes. He said it applies to police officers generally, which it does apply to police officers. We don't contest that. Really, this gets us into, is it reasonable for someone to disagree over whether this right should extend or when it did? And that's where some of the other decisions, particularly from the Eighth Circuit, come in, because their reasonable minds did disagree. Four judges there held that it doesn't extend, or at least it wasn't clear, that it extends past police officers or past prosecutors and attaches to forensic witnesses. This is the opinion in Villasana? Yes, Your Honor. Now, your adversary says that that is referring to the forensic investigators' duty directly to the defense, not to the prosecutor. Is that a way of distinguishing that case? I don't believe so, Your Honor, and I apologize. Perhaps I'm mixing up the cases in my mind. I thought that was that argument applied to the Mowbray decision from the Fifth Circuit. You may be right, yes. But either way, Your Honor, no, because in that instance, that raises actually two very excellent concerns here, which is one, that really does now get us into parsing, holding, and dicta, and if he wasn't even sure whether he had to provide this to the defense or the prosecution based on an out-of-circuit case, that gets us into parsing, holding, and dicta. But the other issue is, if we actually take that argument and extend it to its logical conclusion, it actually raises the exact problem with the district court's decision here, which is, it's not entirely clear what someone in Stevenson's shoes now is required to do, or was required to do. Everyone seems to be assuming that if this right extends, it's the exact same as a police officer's would be, which is just provide everything to the prosecutor. But I don't think we can assume that, because the facts of this case alone demonstrate that someone in Stevenson's shoes actually gets materials and requests and interaction from other parts of government. For example, the 1999 testing by Stevenson and his formal report, that was all done at the behest of the New Haven Police Department, and he submitted all those materials to the New Haven Police Department. He didn't even send them to the prosecutor initially. So if we were to assume that it's just a regular Walker clear obligation, in theory that would be a violation because he didn't send it to the police officer. But the plaintiffs don't allege that. They agree that that was sufficient because the defense got it. So the distinction for the difference in the role of these officials very well could impact, and respectfully probably would impact, what their actual specific obligations are under Brady, if this court were to finally recognize this right in the first instance in this case. I also, I would also, it seems to me, this is Judge Walker, it seems to me that what you're saying then is that if he were in the New Haven Police Department and they had their own crime lab and he was a police officer, he would have an obligation. But that he doesn't have such an obligation because he's not, he's not really a police officer, yet he does work for the state police. And so are we drawing a distinction now between whether he wears a uniform or not, or whether he's sworn or not? If he was a sworn state police officer doing work at the behest of the New Haven Police Department, then presumably your side would not prevail. But you're saying that somehow there's a difference. That's what I'm trying to understand, what the difference is. He's not totally independent of the police because he works for the state police, and the state police, as has been discussed, is effectively an agent of the New Haven Police Department in this capacity. So that's why I have, I don't think it's a, it's such a stark extension as you, as you think. Now it may be that there's, you know, it's not clear. It also may be clear, it may make sense to to figure out, get more evidence after, you know, deny this motion, but that I denied it, affirm here, but let it go to summary judgment so we can understand what this guy, what this guy, what the situation really was here. But that, so that's my, that's my question. Does it really boil down to these things like whether he wears a uniform or whether he was sworn as a police officer? Respectfully, yes, your honor. Now a few questions in there, if I may. One, yes, we do, we do agree and concede that if Mr. Stevenson was a, employed as a sworn police officer for either the state police or New Haven at the time in question, then yes, Walker would apply to him because that's exactly what Walker says essentially. However, we would not agree that the distinction drawn here by our position is, is one that's either too fine or, or improper. And I think there's three important things to remember for, that demonstrate that. First, it is one that other courts have drawn. So, so the Villasana courts did draw this distinction for forensic witnesses that were employed by the state, so the DNA techs in Villasana were employed by the state highway patrol division, I believe. And they drew that distinction. Now, perhaps it's the case that this court decides that's the wrong distinction and that's not going to apply in the circuit, but at least demonstrates it's not beyond debate, even among legal professionals, let alone a lay witness. But also, when we remember that the Supreme Court in this court's jurisprudence requires that we start the qualified immunity purposes from the viewpoint of the official, that actually lends credence to our position because it's quite possible that not every forensic witness would be employed by the state. If the prosecutor hired a private contractor, that's not employed by a state agency or a police agency. But presumably, if the right extends to one forensic witness working with the prosecutor would presumably apply to all of them. We don't have any, any case law sorting out these issues at all. And finally, the third point, I think, Your Honor, is, is to remember exactly the difference of our position at this stage, which is for qualified immunity purposes, we are only asserting the clearly established challenge here. So it may very well be that Your Honors believe this states a Brady claim and that it should be recognized and going forward and it should apply. But we don't have any guidance that even addresses this case. This is the Judge Jacobs. Um, I think you've drawn the essential distinction. One is, is it clearly established? But then assuming that it's not clearly established, which way should we go with respect to the obligation of a forensic examiner who is not sworn as a cop? Um, yes, Your instance, if the court were to pursue a step one Pearson analysis versus a step two, um, we don't have any formal position or objection to the court recognizing the right if it believes that that's a proper extension of the due process clause under the Brady doctrine. I'm asking you is what is your position? Because that's, you know, I mean, that you're arguing that's not an issue here because it's not clearly established. But, um, we might reach the issue. And if we reach the issue, what's the correct answer? Uh, Your Honor? Uh, my response to that question would be, um, this. My client's position is that it's not clearly established. And essentially, he doesn't have a dog in the race for that. As as my role as assistant attorney general for the state of Connecticut, my response would be that it may very well be a correct development for Brady to progress and attached to the state forensic lab or a municipal forensic lab that that may be a correct development of Brady. But what we just wanted to be clear because we have to advise all of our clients on these issues. And right now it's not clear. It's not clear. Um, at all. What after it's particularly after this, of course, decision, it's not clear at all to various lab techs now in Connecticut in the circuit what they're required to do. And if that's an issue that your honors wish a further briefing on, we'd be we'd be happy to provide that as well. Can I just ask? Would you draw a distinction? Then I know we're taking you a field of your argument today. But between the state forensics lab, which is I understand it. I mean, the state police lab, its work is essentially for police agencies throughout the state. And that's that's its client. That's the only its only client. Would you draw a distinction between them and independent contractors who might be asked to do scientific, um, review for for Brady purposes? Uh, no, Your Honor, because at least under the reasoning of the district court's decision, they use the words arm of the prosecution or part of the team. And this is a great example of of the issues with Brady specifically and how to extend it or not extend it, which is ultimately it's the decision of the prosecutor to go out or the obligation of the prosecutor to go seek out all this these materials and make the underlying decision of what's Brady and what's not. And that makes sense for all sorts of reasons, mostly because they're lawyers who know these issues cold. But the just because an agency is asked to have a government paycheck or not, we don't believe that that would if your honors were to extend the right, we think it would be make more sense to have it applied to lab text versus not lab text as opposed to the name of the agency the person works for. Um, and a perfect example of this. In this case, the fact that the state police, um, how was the forensics lab at the time? That was just a function of administrative Connecticut government. That's actually no longer the case. They're housed under a even bigger agency that houses even more other smaller departments, and they're not even under the state police anymore. So rather than the name on the letterhead or the paycheck the person actually obtains, I think it makes more sense to have it based on their actual role. And that comports with the various qualified immunity analysis that we start from the role of the official. Um, uh, their viewpoint. Thank you. We'll hear from the athlete. Thank you, your honors. Good morning, your honors. Douglas lead for the appellee Vernon Horn. The question here is, was it obvious to a civilian forensic investigator for the Connecticut State Police in 2000 that he could not hide material exculpatory evidence from the prosecutor and the defense? The question is not, was it completely clear what exactly he had to do? Who exactly had he had to give it to? The question is, was it clear that he could not do what the allegations of the complaint say he did, which is intentionally hide it from everyone in Kyle's versus Whitley. The Supreme Court held that if quote others acting on the government's behalf in the case, including the police, are in possession of braiding material, that material must be disclosed to the defense, regardless of whether the prosecutor even knows it exists. That's the holding of Kyle's. And I think it is remarkable, your honors, the extent to which the appellant ignores Kyle in his briefing and again in the argument today. There is no question here that Stephenson was acting on the government's behalf in the criminal case. As judges Livingston and Walker pointed out, that's the whole point of what the Connecticut State Police lab was doing here. Furthermore, in Walker, this court held that quote the police satisfy their obligations under Brady when they turn exculpatory evidence over to the prosecutor. So it is clear beyond dispute from Kyle that my client Vernon Horn had a constitutional right to any braiding material that was in Stephenson's possession. And it's clear that if he was a sworn police officer, he would have had to affirmatively give that is that he could have reasonably believed in 2000 that he was allowed to hide the evidence because he wasn't a sworn cop. No reasonable official in his position in 2000 would have believed that. And the reason why is that it's totally inconsistent with Kyle. If you know the defendant has a constitutional right to the material in your possession, which he did under Kyle, even if the prosecutor doesn't know that material exists, then it's impossible to hide it. If you know it has to end up in the defendant's hand, how could you possibly reasonably believe you're entitled to hide it from everyone? You can't. Moreover, there is no reason to believe that the distinction between sworn and unsworn police officials matters. Judge Walker asked a question about well, what if this was a New Haven police lab? Funny enough, this is actually in the record in Stephenson's testimony at pages 60 and 61 of the appendix. Stephenson, in the early and mid 90s, did exactly the same work for the New Haven Police Department while he was a detective, same analysis, same training, same function. It was just in-house as opposed to being sent up to the state police lab. So what he's saying is that you could have sued him for doing the exact same thing in 1994, but you couldn't sue him for doing it in 2000 because he turned in his badge and he went 20 minutes up the interstate. That's not reasonable, and the reason it's not reasonable is because under Kyle's, it was clearly established that regardless of which agency he was in, all the material in his possession needed to get into my client Vernon Horne's hands or was a violation of his constitutional rights. Can I ask on your read of Kyle's? I mean, Kyle's is about the constitutional right of the tell us that there that there is a constitutional duty on particular government actors to to provide the information as opposed to reading Kyle's as saying the prosecutor must reach out to people who may be in the hand in the possession of exculpatory information located and make sure it's disclosed. Well, Judge Livingston, first of all, I would say that to the extent it's material, the complaint is silent on the question of whether the prosecutor asked Stevenson, do I have all the material exculpatory evidence in your possession, and as to whether Stevenson concealed that. If that were relevant to the analysis, we could allege that because the prosecutor testified in his deposition that it was his practice to make sure all of his investigators gave him everything. So I just want to make that clear, but the answer to your question, Your Honor, is that it may be the case that Kyle's doesn't establish what exactly do you have to do with it, right? Do you have to give it to the prosecutor? Number one, Walker does tell us that, right? Walker tells us that for police, you have to give it to the prosecutor. So why is it reasonable to think it would be any different for someone in Stevenson's position? And moreover, the question here is not what exactly did he have to do with it. The question is, was it clear that he could not do what he did, which is hide it from everyone? That's the key. Maybe it's ambiguous as to what exactly he had to do. Did he have to write a letter to the prosecutor? Did he have to deliver it to the prosecutor? Did he have to deliver it directly to the defendant? Okay, maybe that's not clear, but there's no way that it can be consistent with Kyle's to hide it from everyone. Because if you hide it from everyone, there's no way it can possibly make it into the defense's hands. As Kyle's clearly establishes, it must. Counsel, this is Judge Jacobs. You make the point that it should make no difference whether the forensic examiner was in-house at the police department or working at a police lab. But your argument seems to go a lot further and to say that anyone, even someone working at an independent lab doing piecework, should know that a false statement could have these horrific consequences and therefore should be liable. So I'm wondering where you're drawing the line here. Are you arguing that there's no qualified immunity, even for a person who works for a commercial lab? Judge Jacobs, I think that's a great question. And I think what that really goes to is, was it reasonable for someone in that person's position to believe that they were not acting on behalf of the government within the meaning of Kyle? So I could see a case in which you had someone who's basically an independent contractor, you know, someone more in the nature of a civil rule 26 expert witness for the government who says, hey, it's not clear to me that I am acting on behalf of the government in the case under the meaning of all this Brady case law that makes clear that the obligation attaches to those people. But that is definitely not this case, Your Honor. I mean, if the prosecution had stood up in court in 2000 in the criminal case against Vernon Horn and Marquise Jackson and said, Your Honor, Brady doesn't apply to reports generated by the Connecticut State Police Lab, they would have been laughed out of the courtroom or sanctioned or both. Here there is no argument that Stevenson was doing anything other than acting on behalf of the government in the criminal case. Because as Judges Walker and Livingston pointed out, his function was to figure out who did it and then help put that person behind bars. Does it matter in terms of this case whether to the extent to which your client may have understood or understood the situation under whether he was prevaricating when he testified, whether he lied when he testified? I understand that. Well, he clearly when he testified, he said he said there were no further reports and that was not true. Yeah, and if he said that, then presumably you would argue that that was a lie. There were further reports. And in fact, we do argue that, Your Honor. I think part of the issue is that some of the does it matter for this analysis at all? No, I think that allegation lends credibility to the the allegation of our complaint that the evidence that he knew to be material and exculpatory. But because the sufficiency of that allegation isn't challenged, I don't think it matters because that's not in dispute, right? There's no argument here that we haven't stated a claim. So for purposes of the analysis before this court, Stevenson had material exculpatory evidence in his possession. He knew it was material, he knew it was exculpatory, and he chose to bury it so that no one, not the prosecutor, not the It wouldn't matter, right? I mean, the crux of your argument is that he's an agent of the police and that the Walker holding was enough. So even if so, the classic Brady claim, intention doesn't matter. So I'm not sure why, I mean, intentionality may help make your claim more salient and even more troubling, but is it really necessary? What if he hadn't realized the GRC report was material and he so didn't turn it over? Wouldn't that still be a clearly established claim by your argument? Well, I think it would, Judge Livingston, but I'm trying to acknowledge here that perhaps there's some ambiguity at the margin as to what exactly he is supposed to do with the material exculpatory evidence he knows he has. Maybe it's not clear to him exactly where that's supposed to go. I think it's clear, very clear under Walker that it's supposed to go to the prosecutor, but maybe he could say, oh, I'm not a sworn cop, but it should be amply clear to him that the one thing he can't do is bury it so no one sees it. That's the point, so that even if there's ambiguity at the margin about what exactly he should do, the question before this court is, was it clear that he couldn't do what he did? If he knew what he, according to your argument, he knew what he should be doing or could be held liable for what he was doing when he was actually a member of a police department before he went into the crime lab job, then is that fact relevant in terms of determining, in this case, whether he should get qualified immunity? In other words, we have to ask the question at a certain level of generality or a certain level of specificity, excuse me, I sort of said it backwards, certain level of specificity, and how specific is it? Would the part of the specific statement of facts that one would look at here is the fact that he was prior to this subject to an obligation because he was a member of the police department? Judge Walker, candidly, I think the question is whether it would be objectively clear to a civilian forensic firearms investigator who is investigating murder for the Connecticut State Police, whether they were not permitted to hide material exculpatory evidence from everyone. And I think because it's objective, I don't know that Stevenson's biographical details factor into that part of the analysis, but I think they just go to show how absurd the distinction between a sworn and unsworn law enforcement officer he's in the Brady context, because the whole question of which lab were you in is an artifact of state and municipal governmental design that has nothing to do with Brady, because Brady, under Kyles, applies to all those acting on the government's behalf in the case, and there is no way Stevenson could have thought in 2000 that he was anyone other than that. Mm-hmm. So we'll hear from Mr. Rosenthal. Thank you, Your Honor. Yes, thank you. This is Kenneth Rosenthal, and I represent Marquise Jackson in the companion case, and I had ceded most of my time to the able counsel for Mr. Horne, and I was no mention of by the appellant, and in addition to that, Strickler versus Green are cited in our brief with language that makes it clear, as the lower courts have made clear throughout the country, including the Second Circuit, that the test is, is this person who suppressed Brady material an integral part of the prosecution team in the criminal case at issue? And the courts have had no problem in distinguishing between some agency of the, some remote agency of government that is not part of the prosecution team. We cite some cases on page 17 of our brief in which there's been an attempt by defendants in, in civil rights cases to claim that because the IRS or the Office of Thrift Supervision or some other remote agency had exculpatory information it was a Brady violation, and they said no, they're not part of the prosecution team. But in this case, Mr. Jackson's allegations in his complaint, which is what controls at this stage of the litigation, make it 100% clear, and I don't know that there's any good faith basis to contest it, that James Jackson, police detective, who upon retirement moved over to the state police lab to do exactly what he was doing before in a different position, knew he had a Brady obligation to turn, and did have a Brady obligation, to turn over, to not hide exculpatory evidence. He was so integral to the prosecution team in this case that the forensic evidence we're talking about was sent to him from the day after that was recovered from the crime scene. So you would say there might be a distinction, but with a commercial lab that, that contracts to do some amount of piecework for the state in a Connecticut, in a state police lab, that that's just when the, when the state police lab acts, whatever municipality it may be acting on behalf of, it's part of the prosecution team. Basically, yes, Your Honor, and by the way, Judge, what we did, there have been cases around the country where that issue has been raised, and in some of them they've held the Brady obligation as well, but that's not this case. And the allegations of the complaint indicate how closely related Detective Stevenson, or former Detective Stevenson, was. The allegations are he was an integral part of the prosecution team, and the evidence will show that. It's, it's, and those allegations of the complaint are accepted as true for purposes of this. So we don't have that, that case where some lab technician in some remote area who would have no reason to know he had a Brady obligation, or she had a Brady obligation, when that case presents itself, perhaps. But that's not this case, and that's not these allegations. Allegations, by the way, which are nowhere mentioned in any of the briefing that's were, in any event. So I would emphasize that point, and, and I would join with Attorney Leib's indication that it's absurd to suggest that this, this state police ballistics analyst, in a murder investigation in which ballistics have become central to the case, would have no way of knowing, or would not reasonably be aware, or wouldn't be certain, to use Attorney Finucane's words, that he had an obligation not to deep-six unhelpful information with respect to the forensic findings that he knew were central to the case. How could that possibly not be clearly established to him and everyone else who would perform a function like he performed in this case, based on the allegations of the complaint. Thank you, Mr. Rosenthal. We'll hear rebuttal. Thank you, Your Honors. Three brief points. First, regarding Kiles and Strickler that the plaintiffs are heavily relying on here today, they've relied on it heavily throughout their briefing, and the problem is other courts have disagreed with them. Villasana expressly disagrees that, that Kiles or Strickler makes anything clear other than what the prosecutor is required to go do, and, and that's what those cases stand for. At least that's what it's clear that those cases stand for. Regarding of what, the idea that it's not somehow relevant or, or dispositive what Stevenson was required to do, his constitutional obligation is the issue being litigated here. So there's all this discussion about, well, it perhaps ambiguous or it's unclear. If it's ambiguous or unclear what his Brady obligation was, that's immunity. That's what the case law says. That's what is different about a qualified immunity argument versus a 12b6 argument. If it's not defined with specificity what he was, he must know he was doing, then he's entitled to immunity. And, and, and a part of that is the fact that all these things about hiding things, assume someone asked for this in the first place, that's not alleged anywhere in the case. Finally, this all shows what is really happening here, which is plaintiff's theories of the cases here are all a way to circumvent the prosecutorial immunity and the absolute witness immunity as well. And we would just ask your honors to remember we have briefed that in the Horn case. Um, and, and all this talk today about how he was integral part of the prosecution team only strengthens and confirms that prosecutorial immunity argument. I mean, that is the buzzwords from Hill. And that is what is important for O'Neill. So counsel, this is just shaking, but even a prosecutor doesn't have absolute immunity or investigative work only for advocates. Correct. You're I'm sorry, I didn't mean to cut you off. Are you finished? I'm done. Um, thank you, Your Honor. So yes. And, and our simple response to that, Your Honor, is to draw the distinction, uh, that of a fact that our prosecutorial immunity defense in the Horn matter is a partial defense. We assert it only for the year 2000 conduct where, and the complaint in the, in the transcript of, of Stevenson's testimony made clear that that conduct was done at the behest of the prosecutor on the eve of trial as part of the prosecutor's preparation of his testimony as a witness. And so that's the only, excuse me, I thought that was a disputed issue. Uh, whether, whether the prosecutor, uh, commented to him or made a request to him to go, go do further work and do, and, and, and come up with a, with a better answer or whether he just, uh, I thought it was debatable or whether he just commented, is there, is, is there any way that you can say that this, this, the Beretta was, was involved and then, but, but, but not particularly directing him to, to, to do anything. And he could have, I guess he could have answered that question right there, but he went back and then he did his own investigation further. But, um, I thought that that was not a, not a certain, certain, a certain factual determination on that point. It was disputed. Uh, yes, your honor in part, no in part. So yes, your honor, there, there is a dispute as to the specific, um, uh, instruction or direction or what have you that, that the prosecutor made to Stevenson. Um, and on the absolute immunity point, wouldn't that be critical? In other words, if he did something to further the prosecution to help him win the case, that might be a very different question on absolute immunity than if he just made a comment and asked if there was, uh, if, if he could testify that this was a Beretta. Yes, your, uh, so your honor, my answer to that would be if it matters, it doesn't matter in this case, your honor, because applying the facts and the law from the two O'Neill decisions, we, we respectfully submit, it becomes very clear that O'Neill applies here. And the important thing, um, is the argument below and, and the briefing and the decision below, there was a lot of argument over whether it was a request of direction, um, and instruction respectfully, all those words are actually born out in O'Neill. In fact, the actual words in O'Neill is done at the behest of the prosecutor. And more importantly, that he wouldn't have done it if it wasn't for the prosecutor's inquiry. Ultimately, we think that the three factor test we've proposed for this, this immunity here close in time to the testimony at trial caused by the prosecutor's inquiry and most important, actually testified about in open court as a follow up. Those three are the critical factors from O'Neill and they all apply here. So regardless of whether we call it a direction or an inquiry or resume, it was just a request that the motion to dismiss stage, there's no dispute that those three factors, uh, close in time causation from the prosecutor's inquiry and follow up and testimony all apply to this case. Can I just ask one factual question on, on the, how these GRC reports are generated. When the briefing refers to the margin of error with regard to the rifling characteristics, I've been assuming, and just correct me if I'm wrong, that what happens is some sort of computer analysis where you can set what the margin of error of the measurements would be. So it's doing, he's using a computer to help him interpret the, the rifling characteristics. Yes, your honor. It's being plugged into a computer system and then that the, the GRC documents themselves are essentially print offs from that system or the screen of the computer, but it is done through a computer. What's Mr. Stevenson, a member of the prosecution team? We, we don't believe so, your honor. We believe he was a part of the forensic lab and that he was consulted by the prosecution, but we don't, we don't consider him to be the same part of the prosecution team as say the New Haven police were. Why can't somebody who's working in a police lab be part of the prosecution team? You're saying it's the affiliation that drove the distinction? No, your honor. We think it's, it's how they are used by the prosecution. And here, this was, this was a witness who had a small role in the case. And we don't believe that it was an integral part of the team to the level that the police or some of the eyewitnesses or the other folks were. Well, the allegation is he had a big role because he testified that, that, that the, the, uh, the, the weapon likely was not the weapon that was identified by the eyewitness. That would have been big. Your honor, I would definitely concede that it's alleged in the complaint that he's an integral member or arm of the prosecution. Those words are in the complaint. Um, as part of an element of a Brady claim. So at this stage in the case that is alleged. Your honor, this is Douglas lead. Since we got into a completely new issue on the third point of supposing counsel's rebuttal on absolute immunity, may I be heard for 30 seconds on that issue? 30 seconds, but I think it was very adequately briefed, but go ahead. Okay. All I wanted to say, your honors, is that on the allegations of the complaint, this is a 12 C six motion. There's no direction. The prosecutor didn't know what Stevenson was going to do. He asked him a question. Stevenson went off, did his own thing. No one told them to change the margin of error, which is something he does and puts into the database. No one told him to withhold the evidence. No one told them anything about what he had to do. He did it himself. Those allegations are true for these purposes. There's no immunity. Thank you. I have a question. I have a question about the just going back to what Judge Livingston, Chief Judge Livingston just mentioned, and that is the nature of the GRC reports and how they develop. Is there a should be the two per 1000 as opposed to four per 1000? No, Judge Walker. What? What? Stevenson testified at his deposition is that it's a judgment call based upon the forensic investigators training and experience and his observations of the physical evidence recovered from the crime scene. And he testified that in his judgment when he did it the first time, the correct margin of error to use was plus or minus two. And we do anything that I'm sorry. I think if we're going to get into Stevenson's deposition testimony, I think we're getting a little far field. But everyone agrees there is no standard margin of error and drawing all inferences in Mr Horn saver from the allegations of the complaint. The right way that Stevenson believed he was supposed to do it the first time was plus or minus two. And then he manipulated it to plus or minus four when he learned that the prosecution was arguing that it should have been that the murder weapon was a Beretta. We're not in agreement on that. But I think I think at this point we're far field. I think we had an adequate explication of that and that point also in the briefs. And we understand both of your points. Are there any other questions from the panel? Nope. All right. I think I think the case is, uh, is submitted. Thank you all for your arguments. Very, very nicely done. Thank you, Your Honor. Thank you.